STATE OF IOWA, Appellee, v. WILLIAM LARSON, Appellant.

**HOUSES OF ILL FAME:** Reputation—Fact-Assuming Question. In
1  proving the reputation of the house which an accused is charged with keeping, it is manifestly improper to tolerate a question which assumes, even inferentially, that the accused *is* keeping a house of ill fame.

**WITNESSES:** Cross-Examination—Undue Limitation. The accused in
2  a criminal cause must not be unduly limited in his cross-examination of witnesses.

**CRIMINAL LAW:** New Trial—Immaterial Matter as Basis for Im-
3  proper Argument. The injection into a criminal trial of wholly immaterial matter, manifestly for the sole purpose of basing an improper argument thereon (which was done), may constitute *incurable* error. So held where, on the trial of an accused for keeping a house of ill fame, the State was permitted to introduce testimony as to the presence in the house of the children of the accused and of the care and treatment accorded them.

**CRIMINAL LAW:** Trial—Misconduct—Failure to Except. Misconduct
4  of the county attorney in his opening statement is waived by a failure to except thereto.

Headnote 1: 40 Cyc. p. 2433. Headnote 2: 40 Cyc. p. 2515. Headnote 3: 16 C. J. p. 916; 17 C. J. p. 321 (Anno.) Headnote 4: 17 C. J. p. 79.

*Appeal from Winneshiek District Court.*—JAMES D. COONEY,
Judge.

APRIL 8, 1925.

DEFENDANT was indicted for the crime of keeping a house
of ill fame. Cause tried to a jury, resulting in a verdict of
guilty. From the judgment entered thereon, defendant ap-
peals.—*Reversed.*

*E. R. Acres*, for appellant.

*Ben J. Gibson*, Attorney-general, and *J. A. Nelson*, for ap-
pellee.

DE GRAFF, J.—The grand jury of Winneshiek County,
Iowa, on March 4, 1924, returned an indictment against the de-
fendant, William Larson, accusing him of the crime of keeping
·a house of ill fame. A companion case is found in *State v.
Christy*, 198 Iowa 1302, in which the primary facts of the case
at bar are recited.

It is contended by appellant that the court erred in over-
ruling the objections of the defendant to questions bearing on
the reputation of the house involved in the indictment, and oc-
1. HOUSES OF ILL    cupied by the defendant, Larson. The brief
FAME: reputa-     point is predicated on the thought that the ques-
tion: fact-assum-
ing question.     tion contains an assumption of fact which con-
stituted an ultimate question to be passed on by the jury.

Three witnesses for the State were permitted to testify, over
timely and proper objections, to the following question:

"Do you know the general reputation of the house occupied
by the defendant William Larson prior to February 16, 1924,
as so kept by him? Answer that 'Yes' or 'No.' "

These witnesses answered that the general reputation of
the house of the defendant, which was the subject of the in-
quiry, was bad. Did the question incorporate an assumption of
fact necessary and essential to be proved by the State? The
question is identical with the one condemned in the *Christy*
case, in which it is said:

"The objections should have been sustained. The impro-

priety of the question in this form is palpable, and leaves no room for debate.''

We discover no fighting issue or distinction between the two cases in the matter under consideration. True, in the *Christy* case the defendant contended that she was not a keeper of the house, whatever its character, but that she was a mere employee and servant of the occupier of the house. In the instant case, the defendant, Larson, concededly was the occupier of the house. He was the landlord, and the head of the family that lived in the house. In view of the charge in the indictment, and in the light of the evidence offered in support thereof, the words ''keeper,'' or ''so kept,'' have a significance different from the words ''occupier,'' or ''so occupied.'' We cannot ignore the word ''so,'' or treat it as mere surplusage. It carries an implication or inference that is prejudicial in character. It does involve an assumption that Larson ''kept'' a house bawdy in character. Interpreting the question in this way, we cannot give it our approval.

Complaint is also lodged against rulings of the court in limiting counsel for the defendant too strictly on cross-examination. The complaint is well based. What is said in the *Christy*

2. WITNESSES: cross-examination: undue limitation.

case, supra, finds application here. Although the latitude of cross-examination rests in the sound judicial discretion of the trial court, the privilege of cross-examining in a criminal case is a substantial right of the defendant, and should not be limited or abridged too strictly.

It is further urged by the appellant that the trial court. erred in overruling objections of the defendant to certain questions relative to the care and treatment of his two minor children. These children lived in the home of the

3. CRIMINAL LAW: new trial: immaterial matter as basis for improper argument.

defendant (the house in question), and were in the care of the housekeeper, Edith Christy. It appears that a party was given by the defendant in his home one evening, at which time it is shown that those in attendance danced, smoked cigarettes, drank liquor, and otherwise conducted themselves in an unseemly manner. The record to which the objection applies is as follows:

''Q. Now the children were still up when you [witness

Lillian Mitchell] got up there that night? A. Yes. Q. Who put the children to bed? (Objected to as irrelevant, immaterial, and throwing no light on the action charged. County Attorney: 'It throws a lot of light on it.' Court overruled. Exception.) A. Edith and I put the children in the bedroom, and stayed in there with the children maybe fifteen minutes. Q. Now did the children go to sleep when you were in there? (Same objection; same ruling). A. They were not asleep when I left the room. Q. Did Edith go back in the bedroom after you were there when she put the children to bed? (Same objection and ruling.) A. I don't know."

We fail to discover the materiality of this inquiry. The testimony, although viewed as nonprejudicial, did serve as a basis for the prosecutor in making an improper argument to the jury, and, as contended by appellant, the evidence was introduced for the purpose of argument only. The county attorney said:

"What may we expect from these children? And, ah,— there is another thing, gentlemen. Why was it necessary, when Edith Christy put those children to bed, for her to go in that bedroom and lock the door? Was it necessary to dope those children in order to put them to sleep, or what, in that case, was it necessary to do that for?"

This statement was not warranted by the record, and was so recognized by both the court and the county attorney, since it is shown that, upon the suggestion of the court, the county attorney said:

"I will withdraw that, your honor."

Thereupon, the court instructed the jury to disregard any remark not supported by the evidence.

We cannot condone prejudicial remarks of this character, nor do we believe that the error was cured by the withdrawal and the admonition given.

Further misconduct is charged by the appellant in that the county attorney, in his opening statement to the jury, said that Nellie Van Gorder, a witness for the State, would not be present at the trial because she had been sent to Iowa City for treatment of a venereal disease. The record fails, however, to show that exceptions were taken to this statement. An unverified motion for

4. CRIMINAL LAW: trial: misconduct: failure to except.

new trial cannot be given consideration as to matters to which no exceptions were taken in the first instance, and when such matters are not otherwise supported by affidavit or proof.

For the reasons indicated herein, the judgment is—*Reversed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.