EDWARD SCHRAM, Appellee, v. N. K. JOHNSON et al., Appellants.

No. 38973.

MAY 7, 1929.

*Shaw Van & Shaw Van* and *L. W. Powers*, for appellants.

*W. E. Kahler* and *Salinger, Reynolds, Meyers & Cooney*, for appellee.

WAGNER, J.—The note in suit, in which the plaintiff is the payee, bears date of July 18, 1921, and purports to be signed by both defendants. The defendants filed separate answers. The defendant Baker pleads forgery. The defendant Johnson admits the execution by him of said negotiable instrument, and pleads material alteration. He avers, in his answer, that, since the execution and delivery by him of said promissory note, the same has been materially altered in a material part, to the material benefit of the plaintiff, who is the payee therein; that the alteration of said note complained of was the adding of the name "G. H. Baker" as one of the makers of said note, when, in truth and fact, his name was not on or affixed to said note at the time when it was made, executed, and delivered by him (Johnson) to the

plaintiff; that he never knew of or consented to or approved the signing or affixing to said note of the signature of G. H. Baker as one of the makers thereof. The plaintiff filed no reply. Upon trial, judgment was rendered upon a verdict which was returned in favor of the plaintiff against both defendants. From the judgment so rendered, the defendants appeal.

There is evidence from which the jury could have found for the defendant Baker on his plea of forgery, and also evidence from which it could have found for the defendant Johnson on his plea of material alteration. It appears that the plaintiff, at the time of the execution of the note, had $3,000 on deposit, without interest, in the Manilla National Bank, of which institution Van Slyke was the cashier. Whatever was done in the way of making a loan of said $3,000 was done through Van Slyke, who was representing the plaintiff. The appellant Johnson is the son-in-law of the appellant Baker. Johnson testified, in substance, that he was in the Manilla National Bank in July, 1921, and Van Slyke wanted to loan him $3,000, and that he told Van Slyke that he could use $1,500; that Van Slyke informed him that he couldn't do it, because Schram wanted to loan the whole $3,000; that, a few days later, Van Slyke told him that he could have the $1,500; that he signed the note for $1,500; that nothing was said to him to the effect that Baker or anybody else would sign the note, and that he never knew that Baker's name appeared upon the note until a short time before the commencement of this action, when he received notice from Schram, demanding payment of the note. It appears that Johnson received $1,500 of the $3,000, and that Baker received the remaining $1,500, for which latter amount Baker executed a separate note. This latter note executed by Baker has been paid. The deal appears to have been handled exclusively by Van Slyke. The plaintiff left with Van Slyke a check for $3,000, payable to Johnson. It appears from the evidence that the check has Johnson's name on the back of it, written by Van Slyke. Van Slyke committed suicide in the fore part of October, 1925, and the bank ceased operation as a bank the same day. It appears that Johnson was the owner of 80 acres of land in 1921, which was incumbered by a mortgage; that he was at that time the owner of a $12,000 note and other property, and Johnson testified that the bank had not exacted any security from him in the last six, eight, or ten years. It is

thus apparent that there is testimony from which the jury could have found that the transaction relative to the note in suit was complete upon the signing and delivery of said note by Johnson to Van Slyke. Baker denies the genuineness of his signature to the note in suit; and from the conflicting evidence, that question was also for the determination of the jury.

The court instructed the jury that the plaintiff would be entitled to recover as against the defendant Johnson unless they found that he (Johnson) had established by a preponderance of the evidence each and all of the following propositions:

"(1) That, at the time the note in question was signed and delivered by Johnson, the name of the defendant Baker was not on said note. (2) That, after said note was signed, executed, and delivered by the defendant Johnson, the name of the defendant Baker, without Johnson's knowledge or consent, was attached to said note, as one of the makers thereof; and (3) that the plaintiff herein knew that the name of the defendant Baker was so affixed to said note as one of the makers thereof after it had been executed and delivered by the defendant Johnson, and knew that the name of Baker was so affixed as a maker of said note without the knowledge or consent of the defendant Johnson."

Johnson assigns as error the giving of said instruction. The complaint is directed at the third of the foregoing propositions which the court required him to prove by a preponderance of the evidence. This complaint is well founded. As  hereinbefore stated, there was evidence to the effect that the transaction was complete upon the signing and delivery of the note by Johnson to Van Slyke. There is also evidence to the effect that Johnson had no knowledge of, and could not have consented to, the appearance of Baker's name as a maker to the instrument. Would an unexplained appearance of Baker's name upon the note as a maker, attached thereto without Johnson's knowledge and consent,  after the completion of the transaction as between Johnson and Schram, through Van Slyke, as the latter's agent, constitute a material alteration, so as to avoid the instrument as against Johnson? We answer in the affirmative. See Sections

9585 and 9586 of the Code of 1927; *Dille v. Longwell,* 198 Iowa 540; *Sullivan v. Rudisill,* 63 Iowa 158; *Hall's Adm'x. v. Mc-Henry,* 19 Iowa 521; *Dickerman v. Miner,* 43 Iowa 508; *Hamilton v. Hooper,* 46 Iowa 515. In the latter case, it is well stated:

"From the foregoing facts it appears that, as to Hooper and William and Cordelia Moody, the note was fully executed and delivered to the agent of plaintiff before it was signed by Ferguson, and his signature was obtained by James Hamilton [the agent of plaintiff] without their knowledge or consent. The law is well settled that this constitutes a material alteration of the note, which avoids it as to all the prior parties thereto."

In *Dille v. Longwell,* supra, we made the following pronouncement:

"While there are authorities holding that an alteration which is not prejudicial, or where the liability of the party complaining is not increased or enlarged, is not material, the weight of authority is that, if the legal import and effect of the instrument are changed, it does not matter how trivial the change may be, or whether it is beneficial or detrimental to the party sought to be charged, it is a material alteration, and invalidates the instrument."

Was the court correct in placing upon the defendant Johnson the burden to establish by a preponderance of the evidence the third proposition announced in the foregoing instruction? We answer in the negative. See *Robinson v. Reed,* 46 Iowa 219; *Shroeder v. Webster,* 88 Iowa 627; *Maguire v. Eichmeier,* 109 Iowa 301; 2 Corpus Juris 1269. In *Maguire v. Eichmeier,* supra, it is aptly stated:

"The alterations in question were material, and, having been shown, the burden was on the plaintiff to show that they were made innocently, by a stranger, or for a proper purpose."

It is apparent that the court, in requiring the defendant Johnson to prove by a preponderance of the evidence the matters set forth in the third proposition in the foregoing instruction, placed too great a burden upon him, and that the giving of the same constitutes prejudicial error.

A witness, after testifying that he had seen Baker's signature a great many times, and was familiar with it, was permitted, over the latter's objection, upon inquiry as to whether or not the  signature appearing upon the note in suit looked like, or resembled, Baker's signature, to answer in the affirmative. This was error. The affirmative answer constituted no evidence of probative force upon the question as to the genuineness of the signature. While a nonexpert witness may state his belief or opinion as to the genuineness of the signature, he cannot answer as to the best of his impression. 6 Encyc. of Evidence 368, 369. While the jurors are permitted to compare the signature in question with admitted or proven signatures, it is improper for a nonexpert witness to be allowed to answer, over objection, that the disputed signature resembles the signature of the party who denies the same. Nothing but the belief or opinion of the nonexpert witness is competent; and the testimony of a witness that a signature has a *close resemblance,* or that he saw nothing differing from the character of the writing, is not to the purpose. *Wiggin v. Plumer,* 31 N. H. (Foster) 251.

A witness who, at the time of the trial, was in the employ of the receiver of the Manilla National Bank, and had been an employee of said institution since 1918, was interrogated as to  whether or not even a small percentage of those borrowing money from the bank had made the claim of forgery, and over proper objection, was permitted to answer in the negative. Manifestly, this was error, and cannot be said to be nonprejudicial. The fact, if it be a fact, that others dealing with the bank did not claim forgery, or that there was no forgery as to other transactions, in no way tended to prove that the signature of Baker to the note in suit was his genuine signature.

It is contended by the appellants that the verdict is not supported by the evidence. It is sufficient to say that the evidence is in conflict, and presents questions for the determination of the jury.

The sole remaining contention of the appellants is that the appellee's counsel was guilty of misconduct in argument and in the making of a certain declaration during the trial of the case.

Since the claimed objectionable argument was not made of record, and no exceptions were taken thereto, nor to the single act of claimed misconduct occurring during the trial, the same needs no consideration.

For the reasons hereinbefore stated, the record reveals prejudicial error as against both defendants, and the action of the trial court, in the particulars pointed out, is hereby reversed, and the cause remanded for a new trial.—*Reversed and remanded.*

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.